HENRY D. MANDEVILLE et al. *vs.* THOMAS STOCKETT et al.

A record must be tried by itself and imports absolute verity; if a party desires to controvert it, the record alone must be relied upon for that purpose, by the introduction of a more perfect record.

The question then can be tried by a comparison of the two records; but it cannot be tried by an isolated entry of one order in the case, or by parol evidence.

Parol evidence can be received for the purpose of identifying a note such as that named in a schedule.

IN error from the southern district chancery court at Natchez; Hon. James M. Smiley, vice-chancellor.

This was a bill exhibited in the southern district chancery court at Natchez, by H. D. Mandeville et al., to recover a decree for money against Thos. G. Stockett and his codefendants.

The bill states that the President, Directors, & Co. of the Planters Bank on October 14th, 1842, recovered judgment against defendants, Mrs. Pinson, Brown, and Thos. G. Stockett, for the sum of $602.78, and $18.25 costs of suit; that November 15th, 1842, an execution issued, which was levied on two slaves, which were replevied by Mrs. Pinson, T. G. Stockett giving forthcoming bond, with Brown and S. H. Stockett sureties, which bond became forfeited; that execution issued upon said bond judgment, but no satisfaction was had; that said suit was brought to recover two notes made by T. G. Stockett, Nancy Pinson, &c.; that March 8th, 1843, the Planters Bank, by deed assigned and transferred " said notes and all securities for the

payment thereof to complainants;" that at May term, 1845, the said corporation, the Planters Bank, was, by the judgment of the circuit court of Adams county, ousted of its franchises and legally dissolved.

The prayer is for a decree for money against defendants for the principal and interest of the judgment on an account taken, &c. Filed as an exhibit to the bill, is a transcript of said judgment from the final record, also an execution thereon, — a forthcoming bond and *fi. fa.* thereon.

To the bill defendants demurred, which was overruled, with leave to answer. The answer of defendants admits the making of the notes, and that the President, Directors, and Co. of Planters Bank brought suit on said notes; but denies that the Planters Bank recovered judgment for $602.78, and $18 costs, or for any other sum, and insists that the judgment pretended to have been recovered by the bank was, as they are advised, no judgment at all, illegal and invalid; that the forthcoming bond, predicated upon such pretended judgment, is invalid, &c. &c.; that defendants had no knowledge of the assignment made by complainants, and insists upon strict proof of the fact. It admits the judgment of forfeiture rendered against the Planters Bank, and relies upon the bar of the statute of limitations.

The complainants filed as proof, copies of the two notes, with the credits thereon, &c.; and also introduced the deposition of W. L. Harrison to prove the manner of making out the schedule of notes, &c., attached to deed of assignment.

The defendants below proved by H. J. Butterworth, clerk of the circuit court of Wilkinson county, that he furnished both parties with transcripts, copied from the final record book; that this final record is made up by the clerk in vacation, being "a copy of the original papers, and whatever may be incorporated into the record by bills of exception, and the entries made on the minutes of the court." He further says, that in this case " the final record as made in the final record book, corresponds with the original papers and entries until it comes down to the final judgment. There is a formal judgment written out by the clerk, in vacation, in the final record book,

which varies from the entry made on the minutes of the court. The words which were entered on the minutes of the court are as follows : ' Plea withdrawn, and judgment by default final for balance of note and interest.' " The witness attaches a copy of the entry on the minutes of the court, under his official seal and certificate, which is the same as that just above copied.   The witness to his eighth answer attaches a transcript of the final record, as copied from the final record book, which is the same copy, he says, he had previously made out for defendants, and with which he compared the "entry" on the minutes, to show the variance between the " minutes entry" of the judgment, and that in this transcript.   The clerk, Butterworth, says there is a variance in the judgment entered on the minutes and the judgment written out by the clerk in vacation in the final record book ; and that this variance will appear by a comparison of the two. This is the entry of judgment on the minutes, certified to officially : " Plea withdrawn, and judgment by default final for balance of note and interest."   The judgment in the final record, written up by the clerk in vacation, is as follows : " This day came the parties aforesaid, by their respective attorneys, and the defendant withdrawing their plea by them above pleaded, say nothing further in bar," &c.   " Therefore, it is considered by the court that the plaintiffs recover of and from the said defendants the sum of $602.78, the damages which they have sustained by reason of the defendants' non-performance of their promise, &c. &c.; also, their costs, &c., by them about their suit expended, and the defendants, &c."

For the purposes of proof is an agreement of counsel, that the printed deed of assignment should be treated as part of the record.

The vice-chancellor decreed a dismissal of the bill at the costs of the complainants, and the case is brought to this court by writ of error.

*Boyd* and *Davis*, for appellants.

The identity of the notes on which the original judgment was obtained, is shown by the deposition of Harrison and the

description of them on page thirty-first of the printed copy of the deed of trust, and the certified copy of the notes filed by complainants.

The transfer of these notes by their numbers on the schedule, carried with it the right to their proceeds, "whether in suit, judgment, or otherwise existing." The object was to convey that part of the unfunded debt to the trustees for the benefit of the creditors of the bank. In whatever condition it might be found, the proceeds were to be appropriated by the trustees to pay the debts of the bank. It is immaterial what form of description was used, if the terms employed were sufficient to preclude the bank from any further claim to the fund to be collected. After such a conveyance as we show, could the bank assert any right to collect the judgments, or either of them, in the cause, on the ground that the deed only conveyed the notes? Such a claim would have been preposterous, even if the deed had contained no phrase like that we have quoted, that is, " whether in suit, judgment, or otherwise existing." That was the appropriate way of describing the suspended debt, because it was impossible for the grantors to know, on any given day, in what condition all their bills receivable really were. Some were in suit in the circuit courts; some lingered in chancery; some on appeal; some in judgment, with executions issued and levied, and others bonded; and no language other than that used would indicate all these possible conditions, but it was entirely and critically sufficient for that purpose. See the decision and briefs in No. 5057, decided March, 1853. The transfer being proved, there is really no other point open, because the deposition of Butterworth does not refer to the judgment on which our suit is brought, but to some other, which he styles " *The Planters Bank* v. *Fielding Davis and David Holt.*" Probably in that case " Stockett and others " were codefendants, as it was not at all uncommon for the bank to have many suits against the same parties as principals or sureties on a variety of notes. At all events, that record is not the one on which our bill was filed.

Second. This action having been brought on a forthcoming bond, judgment comes within the rule in *The United States Bank*

v. *Patton et al.*, 5 How. 241; and the deposition of Butterworth was clearly incompetent, as it referred to the original judgment. See also 1 Ib. 98; *Powel* v. *McLeod*, 1 S. & M. 391.

Thirdly. But we insist the testimony of Butterworth does not prove that there was not a proper judgment on the minutes, and in the final record in the case to which he refers. He was not the clerk till 1849, seven years after the judgment rendered. At that time he came into possession (probably) of the old books, papers, minutes, and records belonging to the office. Now if he can be called on as a witness, which we deny, to contradict the final record made up by his predecessors, we insist that the most rigid rule of proof shall be applied to him. It will not do to raise a doubt or suspicion; he must show a state of facts so specific and certain as to leave no other conclusion possible than that there never was a proper entry on the minutes or a correct final record. 8 S. & M. 43; 1 Greenl. Ev. § 503–508; 1 How. 41; 3 Ib. 165; 8 S. & M. 322. There must be "a certainty to a certain intent in every particular," because he speaks against the highest evidence known to the law, and on the facts of which the whole fabric of society rests. Now his testimony falls far short of this. He is not even asked the question, whether there was no other entry on the minutes of that day wherein there was a full judgment entered between the same parties. And the same thing is true as to the final record. This, we insist, leaves his testimony fatally defective, and our record is unimpeached.

We insist the lapse of time prevents this attempted defence. After the time allowed for appeals and writs of error, the court will not allow the effect of an appeal or writ of error to be obtained by proof *in pais;* and more especially where the statutes of limitations would prevent all remedy to the opposite party. 1 Cushm. 138; 2 Bay, 333; 2 Ib. 457.

We take the ground that the entry on the minutes here was a judgment, and sufficient to warrant the full and complete record of it on the final record. What are our final records in the circuit court, and what are they "made up and entered from?" We cannot fully understand this subject without referring to what are called the rolls or records of the courts in

Mandeville et al. *v.* Stockett et al.

England and New York, from which most of our authorities are derived.

In England there is no "making up and entering" the proceedings in a cause after the term of court. The roll — not record — as it is called, is made up in court as the case progresses. No step is taken except what is of record at the time. Down to the joinder of issue, it is made up where the action is commenced. From that court the roll is transferred to the place of trial, usually the county where the facts at issue transpired. Jac. L. Dic. v. 6, p. 301; 5 Ib. 397; 3 Ib. 567. Whatever occurs there is indorsed on the jury panel by the judge, clerk, or attorney. 3 Ib. 554. The roll goes back thus increased, and is handed with the *postea* to the successful party, who obtains the additional entry of judgment to be entered accordingly, or else enters it himself. Stephens, Pl. 110, 111, and note *a.* The roll is then complete, and in that condition remains for ever filed away as a final roll or record in the treasury department. Grah. Prac. ch. 4, § 1, 2.

In New York the same general plan is adopted, and the judgments may be signed by a judge, clerk, or commissioner; and their roll is then complete. Now, with us this is all different, and the theory of our records or rolls is widely different from theirs, and of course requires different rules, and we shall see that our statutes fully show this.

In this State there is no roll technically so called, nor is there any thing analogous to it, while the case is in progress. All the pleadings and proof, from first to last, till some issue is called for trial, either of law or fact, remain as filed papers in the custody of the clerk merely. R. C. 122, § 83. He is required to keep and preserve them. They may be abstracted, altered, mutilated, or dealt with in any way by accident or design, and there is nothing of record to show what has occurred, or to enable the proper correction to be made, or deficiency supplied. His general docket has barely the title of the case, generally abbreviated, with possibly the name of the action and the attorney's names somewhere upon it. Ib. 126, § 101. But the docket, of itself, identifies only the title and kind of action, but shows nothing of the particular matter in controversy. That is

only to be found on examining the papers on file. Next in order come the minutes of the proceedings in the cases as they are called from the general docket in open court. And here again there is no record, but only minutes, that is, "short sketches of what is done," or "notes to preserve the meaning" of the proceedings. And these merely refer to the case by title, and to its condition on the docket, by a brief word or two of description. R. C. 141, § 159; 4 Leigh, 317; 2 Dev. & Batt. 534; 4 Cushm. 381, 382. Thus if the case stands on plea or demurrer, or both, that fact is simply noted. 3 Brevard, 402; 3 Gilman, 48; 1 S. & M. 391; 3 Ib. 463; 1 How. 98; 5 Ib. 241; Ib. 58; 7 S. & M. 511; 8 Ib. 431, 571; 3 How. 227; Walker, 219. Should the issue be one of law, the note is equally brief. Probably something like this demurrer of plaintiff's to A. B.'s plea in abatement overruled, and leave given to take issue in plea. So of a series of pleas demurred to, where the demurrer is sustained as to some, and overruled as to others. So of continuous and every other notice. Nothing more is stated by the clerk than what is strictly included in the word "minutes." No case can be found since the organization of this government, where the minutes have been transcribed as they stand in the final record.

The difficulties in the way of a consistent construction of the laws of the State on the subject are very great, and do not appear to have been thoroughly examined in the decisions heretofore made by this court.

In some cases, the court appear to have leaned to the idea that a full technical judgment should be entered on the minutes. 11 S. & M. 219.

In others and recent times the reverse of this has been decided. Again, there are cases in our reports which speak of the minutes as the real record, and again the direct reverse has been held. 5 How. 58; Ib. 241; Ib. 98; 3 S. & M. 463.

So it has been decided that a judgment in blank is void; and again that it is amendable, or only voidable. 1 S. & M. 391; 2 Cushm. 186–190.

And there are some reasons for each of these conflicting adjudications, but there are also very singular difficulties in the way.

If the minutes are the true and actual record, why is it that

Mandeville et al. *v.* Stockett et al.

the copy of them is regarded as higher evidence than the original?

Why is it that a judgment on the minutes cannot be plead in bar as a former recovery, and why in fine cannot a writ of error be prosecuted from it? How is it that a judgment by default, which by express statute (R. C. p. 120, § 67) is made final on the last day of the term, is made more final for every practical purpose by being copied with the final record months afterwards?

And, on the other hand, if the final record, " made up and entered by the clerk," is the real roll or record of the court, how is it that all appeals taken in term time are actually taken and prosecuted to a final decision in the high court, before the actual record of the judgment is or can possibly be made up? 3 J. L. Dic. 555. And, finally, where are the rolls and records of the circuit courts from the time of judgment rendered till the clerk performs his duty, years afterwards, by " making up and entering the proceedings, &c." in a full and complete record?

Any one who can satisfactorily answer these questions need not despair of settling the question of the infinite divisibility of matter, the quadrature of the circle, or the precise point of time when two parallel lines indefinitely extended will coalesce and become one.

At the same time, we believe the construction for which we contend, is the safest and most consistent of any yet suggested. To consider the record when made up to be just what the books call a record, and nothing else, triable only by itself, to be amended and annulled in the same way, and admitting no averment or proof against it. When made up and entered, it is the highest evidence known to our law, and the peculiar manner of *making* it up, does not detract from its essential character of absolute verity. 1 Graham, Prac. c. 20, § 4–6, c. 3, § 2; 19 J. R. 264; 15 Ib. 318; 1 Graham, Prac. c. 23, " Circuit Roll," " Verdict," " Judgment"; 8 S. & M. 322; 6 Jac. Law Dict. 301; Watts, 427; 11 Ala. 1009; 9 J. R. 289; 1 N. J. 143–145.

If we are wrong as to the correct rule of law, still there is abundant evidence of a long continued usage and practice,

which, if it does not control the statute, establishes a rule of equal validity with it; a rule which the judges have a right to ascertain by proof, and to regard in decision.   5 Cranch, 22 ; 4 How. S. C. Rep. 51 ; 3 Ohio Rep. 142 ; 16 Ib. 651 ; 3 Brevard, 402 ; 1 Greenleaf's Ev. § 510, note 1 ; 7 S. & M. 511 ; 8 Ib. 571 ; 4 Cushm. 381, 382 ; 2 Dev. & Batt. 534.   And the proof is easily made by a reference to our own reports, from 1 How. 41 to 2 Cushm. 186–190 ; also by the proofs in these very causes now on trial.   If further is needed, the judges have the right to make the inquiry.   5 Cranch, 22.

*H. F. Simrall,* for appellees.

The bill, as the cause of action, sets out the recovery of a judgment at law against the defendants, T. G. Stockett and Nancy Pinson, in 1843.   The issuance thereon of an execution, levy, and forthcoming bond, with H. Stockett and Brown, sureties thereon, forfeiture of the bond, non-payment.   This judgment, it is claimed, was recovered by the Planters Bank, and assigned to Mandeville and others, by deed ; and therefore they pray, as equitable assignees, a moneyed decree for the principal and interest.

The question is, first, Did the Planters Bank recover such a judgment against these parties as is stated in the bill ?   What is a judgment?   According to the elementary writers, " it is the sentence of the law, pronounced by a competent tribunal upon the record."   By some of these authors it is defined to be " the sentence of the law, pronounced by the judges upon the matter contained in the record."   3 Black. Com. 395; Stephen's Pl. 138.   At the common law, juries find the facts, and the judge pronounces the law upon those facts.   The jury may find the facts specially, or they may return a general verdict.   Common law jurisprudence has provided the jury to find the truth of issues of fact.   If parties agree upon the facts, and place upon the record an agreed state of facts, the judge, the court can at once pronounce judgment on those facts, and the jury is not necessary.   So a litigant may demur to the evidence, which withdraws the case from the jury, and submits it to the decision of the judge, in whose favor the judgment shall be pronounced.

In such case, the testimony is reduced to writing, and made part of the record, and when so reduced to writing, that has been done which it is the duty of the jury to do; the facts have been found.   Now can it be claimed that the facts thus ascertained, do by implication partake of the nature of a judgment?   And yet the facts thus ascertained, are of the same effect, and of equal dignity with a verdict.

The judgment is the sentence of law arising upon, and applicable to, these facts; and this sentence must be rendered by the judge.

There are several sorts of judgments, as upon demurrer to a declaration, or a plea, or upon a verdict, or by *nil dicit,* &c. And the common law for long ages has provided an appropriate judgment for all these circumstances and cases.   There are also judgments peculiar to the several sorts of common law actions, as for debt, detinue, assumpsit, &c. &c.

We have in this record to deal with a judgment in assumpsit.  Beaurieau, in his Law Dictionary, under title of Judgment. It is stated, that in assumpsit, "it must be for a sum certain of damages," ascertained by the verdict of the jury, or under our statute it may, if suit is founded on a writing ascertaining a sum certain, be ascertained by calculation of the clerk and incorporated into the judgment.

In *Boykin* v. *The State,* 3 Yerg. 426, it is said, " The judgment must be so certain, as that the clerk can issue execution without reference to other entries."

In *Berry* v. *Anderson,* 2 How. 653, in discussing the requisites of a judgment, "it is declared that it must not be indefinite or uncertain as to amount; it must be for a specific sum."

In *Gridley* v. *Denny,* 2 How. 820, the following entry of judgment was held void for vagueness and uncertainty : " *James A. Denny* v. *Andrew Marshall,* 22 Adm.   Motion to quash the forthcoming bond by the defendant in this case, and the execution issued thereon.   Motion sustained, forthcoming bond and execution issued thereon, quashed; the bond being irregularly taken."   " This entry," remarks the court, " does not possess the dignity of a judgment."

A judgment, uncertain as to the amount awarded thereby, as

Mandeville et al. *v.* Stockett et al.

to the time of rendition, or the parties to the suit, and the result, is invalid. *Jones* v. *Acre*, Minor, 5; *Ordinary* v. *McLure*, 1 Bailey, 7.

Each judgment of the term must, of itself, be full and perfect, and in proper form, and if incorrect cannot be corrected by a reference to another judgment correctly entered. *Tombecbee Bank* v. *Strong*, 1 Stew. & Porter, Ala. R. 187. This case deserves a careful study, for in its main features it is parallel with the one in the record.

Mr. Justice FISHER delivered the opinion of the court.

This bill was filed by the appellants in the vice-chancery court at Natchez, to enforce the collection of a judgment recovered by the president, directors, and company of the Planters Bank, in the circuit court of Wilkinson county, against the appellees, on the 14th day of October, 1842, for the sum of $602.78, besides costs of suit. The complainants claim the judgment by virtue of an assignment made by the bank on the 8th of June, 1843.

To sustain the allegations of the bill as to the recovery of the judgment, the complainants filed as an exhibit to their bill, a transcript regularly certified by the clerk, and to the seal of the court, of the final record of said judgment. The defendants, by their answer, deny the recovery of the judgment against them as alleged in the bill, and to sustain their answer in this respect, introduced what purports to be a copy of the judgment as entered on the minutes of the court. This copy is in the following words: " Plea withdrawn, and judgment final by default, for balance of note and interest." The question for decision is, whether the record as introduced by the complainants, purporting to be a full and complete record of all the proceedings in the cause, can be impeached by the copy of the entry of the judgment on the minutes of the court.

The record must be tried by itself. It imports absolute verity; and if the defendants desire to controvert it, they must rely alone upon the record for that purpose, and introduce as their evidence, a transcript of the entire record of the judgment as entered in court, or by the court directed to be entered. The

question then would be tried by a comparison of the two transcripts, and not by an isolated entry of one order in the cause, or by parol evidence, as attempted by the defendants by introducing the deposition of the clerk of the court. 5 How. R. 58.

Several other questions have been argued with distinguished ability; but as we consider them as settled by the previous decisions of this court, we deem it unnecessary to notice them in this opinion. *Montgomery et al.* v. *Galbraith et al.* 11 S. & M. 555.

The question whether parol evidence could be received for the purpose of identifying the note as the one named in the schedule to the deed of trust, was settled by this court in the case of Marsh against these complainants a few days since, and does not now require special notice.

Decree reversed, and decree in this court.